MAY TERM,            James H. Benson v. Cary Peebles.
   1838.

Benson v. Peebles

1. Parol evidence, though inadmissible to vary the terms of a written contract, may be resorted to for the purpose of explaining or removing ambiguities, as to the time, place, and manner of performing the same, where the writing is silent.

2. A. deposited with B. $400, to be used in the purchase of wheat, in case it could be purchased at a certain price—B. being unable to buy any at the stipulated price, deposited the money with one F. and at the same time advised A. of what he had done. Subsequently, and after A. knew that the money was in F.'s possession, subject to his orders, the money was stolen. Held, that the facts above stated, may be given in evidence, under the general issue in assumpsit, as releasing the defendant from all liability, and that they do not amount to a plea of tender.

3. Nor was it necessary to plead *specially* the deposite, &c.

*Hayden*, for plaintiff in error, insisted:

1. That the circuit court erred in permitting the defendant to introduce or give evidence to the jury of the conversations of plaintiff and defendant, either before, at, or after, the executing of the writing by Peebles, acknowledging the receipt of the money, &c., relative to what the contract of the parties was in relation to the purchasing of the wheat, &c.

2. The second point I rely upon is, that under the pleadings in the cause, all the proof given by the defendant in relation to the sending the money to Alsop by the defendant, and of the depositing it by Alsop with Ferguson, and the loss of it by Ferguson, is irrelevant and inadmissible. If the matter of the proof would sustain the plea of tender, or constitute a good bar to the present action, it was necessary and incumbent on the defendant to have pleaded it specially—see 1 Chitty, 173; 4 Saund. n. 2.

3. I insist that the circuit court erred in refusing to give the several instructions prayed by the plaintiff, for the following reasons:

1. The first and second instructions refused, ought to have been given, because there was no plea in the cause under which the tender, or offer to return the money to Benson, could have been given, and therefore it should have been rejected.

2. The third instruction refused, ought to have been given, for the want of a proper plea, presenting an issue authorizing the proof given by the defendant upon that point.

3. The fourth instruction refused, ought to have been given, because the plaintiff gave evidence conducing to show that the defendant did agree to deliver the plaintiff

wheat for the money, which was a question to be determined by the jury, and if found for the plaintiff, no defence set up by the defendant could avail him upon the trial of this cause.

4. The fourth point upon which I rely is, that the court erred in giving the several instructions as prayed for by the defendant, as before mentioned. It erred in giving the first one, because there was no evidence in the cause or issue warranting it. It erred in giving the second instruction for defendant, for the reasons given by me in my remarks upon the second point made. The fifth instruction given, ought not to have been given, because there was no evidence given in the cause to warrant it.

5. The court erred in not setting aside the verdict of the jury, and in refusing to grant a new trial, for the reasons mentioned in the motion in that behalf.

*Kirtly,* for defendant in error, insisted:

1. That the receipt given by Peebles to Benson, for the money in controversy, did not contain their whole agreement. That it was competent for Peebles to prove by parol, that he was limited to, and not to give more than fifty cents per bushel for wheat. There is nothing in the law that required this agreement to be in writing; and the fact proved by parol, does not alter or vary the receipt, or so much of the agreement as it contains, but adds a new stipulation or condition, making up the whole agreement. This violates no principle of law, but is well sustained by the following authorities—3 Stark. Ev. 1047, 1048–9 (1002, U. S.) Maxwell v. Sharp; Sug. 187; 1 Stark. C. 267, also note of; 3 Stark. Ev. 1049.

2. That it was competent for Peebles to have any part of the $100 bills changed, if the money was in $100 bills, for notes of smaller denomination of equal value, that he might, in good faith, deem necessary, to enable him to perfect and advance the object for which he received it.

The authority given him to invest this money in wheat was general and without restriction, except that he was not to pay more than fifty cents per bushel, unless further instructed. He would have been in no condition, without such exchange, to purchase wheat through the country with facility. And the maxim of the law is, that an authority is to be so construed as to include all necessary or usual means of executing it with effect—see Paley on Agency, 159; 2 H. Bl. 618; Pal. Ag. 170, 137 –5; 1 Camb. 43; 4 Bac. Abr. 599; 3 Cain, 226; Story on

Bailment, 296; 1 J. J. Marshall, 289, 290; Pirtle's Dig. 257.

3. There was no error in permitting the defendant to read that part of the letter to the jury which he gave them in evidence. It was his duty to notify the plaintiff of his failure to purchase the wheat, and offer to return the money. This was done by letter, through Alsop, defendant's messenger; and the letter was the last evidence of which defendant had been notified to produce. Again, from the time the letter was delivered, he ceased to be a bailee for hire, and became simply a depository; and consequently, from that time, his responsibility and risk was diminished.

4. The circuit court committed no error in refusing the plaintiff's 12th, 13th, and 14th instructions prayed. The tender made by the witness, was not an offer to pay a debt due, but to return the money, furnished for a purpose which had failed. Neither the tender, nor the deposite, coupled with the loss, necessarily formed the subject matter of a special plea. It only changed the character of the bailment, and relieved him from any liability, except from gross neglect, and in this form of action, was proper evidence under the general issue—1 Chitty's Plead. 472–3; 1 Ld. Ray. 217, 566; 13 J. R. 57, 58; 1 J. R. 124, &c.; 3 Man. R. 111; 6 Mor. R. 284.

5. The deposite with Ferguson was at the risk of Benson, and the loss must fall on him. No act of Peebles had divested Benson of the ownership of the money, or made Peebles his debtor. Peebles had not mingled the money with his own, raised no account with Benson, had appropriated no part of it to his own use; and in the exchange of a part of it for small bills, had, in the exercise of his best discretion, in preparing to purchase wheat through the country, only done what every agent in the country would, and in a large majority of similar cases, always have done; and for which no principal ever thought of giving, or agent of asking, a special authority. Peebles could not then be made to bear this loss, unless he was chargeable with gross neglect. But here he is not chargeable with any, the slightest. He took the same care of the money that he did of his own, and just such as other very careful men took of theirs. Ferguson's house, in which this money was deposited, was robbed, and with it, his own, Peebles', and other persons' money, there deposited, stolen, to a large amount, and Benson must bear that loss, occasioned by his own fault, and not

Peebles—see Pal. on Ag. 15, 16, 17; 2 Ld. R. 917; 1 Esp. Cas. 341, (n. l.); Co. L. (a.) 88, (b.)

EDWARDS, Judge, delivered the opinion of the court.

This was an action of assumpsit, brought by Benson against Peebles, in the Boone circuit court. Peebles pleaded non assumpsit, and issue was joined. The defendant had verdict and judgment, and the plaintiff moved for a new trial, which motion the court overruled. On the trial, Benson read in evidence the following instrument of writing: "Rec'd of J. H. Benson, four hundred dollars, with which I promise to purchase wheat, receive and forward for him, he paying me six and a fourth cents per bushel, and barrels to barrel, at the rate of thirty-seven and a half cents per barrel. Franklin, Nov. 16th, 1835. C. Peebles." Benson then introduced one Harrell as a witness, who testified that Benson demanded of Peebles the wheat which he had promised to purchase for Benson with the money mentioned in the above writing; that Peebles refused to deliver Benson any wheat, and gave as a reason, that he had been unable to purchase any at fifty cents per bushel; that Benson then demanded the money mentioned in the writing, and that Peebles refused to return it to him; stating as a reason, that he had deposited it with one Montgomery Ferguson, of Franklin, in December preceding, from whom it had been stolen.

On the cross examination of this witness, Peebles asked him whether he heard Benson and Peebles, at or about the time of the contract, state what their contract was upon the subject of purchasing the wheat? To the answering of this question Benson objected, and the objection was overruled by the court. The witness then said, that he heard Benson state, at his store in Franklin, that it would be well for him and Peebles to let some person understand the contract between them. Benson said, in the presence of Peebles, that he had let Peebles have four hundred dollars to purchase wheat for him; that Peebles was to give fifty cents per bushel for it, and not more, unless instructed to do so by Benson; and that witness was called upon by Benson to bear testimony to such conversation.

It was then proved, that in the fall of 1835, Peebles came home to Rocheport from Franklin, and brought four hundred dollars, in hundred dollar United States Bank bills; and stated to the witness, who was clerk for

MAY TERM, 1838.

Benson v. Peebles

Peebles, that he had gotten them from Benson to purchase wheat with. Soon after the money was brought home by Peebles, the witness, who acted as agent for Peebles in endeavoring to purchase the wheat, exchanged one of the one hundred dollar bills, for the purpose of purchasing wheat, for bills of a smaller denomination, but of the same kind of money, and thinks that Peebles exchanged one also. The four hundred dollar bills were put in a box of drawers. The money received in exchange was put in the same place. Peebles kept his own money there, but the witness could not say whether it was mixed with the four hundred dollars or not. Some time after, he saw Peebles go to one Lewis Switzler, the father-in-law of Benson, who resided in Franklin, but was then in Rocheport. The four hundred dollars had remained in the drawer as aforesaid, until the interview between Switzler and Peebles, and afterwards this witness never saw any of the money.

One Elliott Alsop testified, that about the 6th of December, 1835, he received from Peebles a letter through the hands of Lewis Switzler, in which was enclosed four hundred dollars, in United States Bank bills. This letter was produced, and proved to be in the handwriting of Peebles, and that it was the same spoken of by the witness; and the one that contained the money as aforesaid. This letter was offered in evidence; to the reading of which the plaintiff objected, but the court overruled the objection, and permitted the following part of the letter to be read. "Please pay Doctor Benson four hundred dollars, which you will find enclosed—the amount I got of him to buy wheat." To the reading of this, the plaintiff also excepted. This witness further said, that at the time he received the money, Benson who resided in Franklin, was not at home; that one, two, or three days afterwards, Benson came into witness's grocery in Franklin, and that he remarked to Benson that he had four hundred dollars for him from Cary Peebles, and Benson said "yes," and walked out. One or two days after this, witness said again to Benson, that he had four hundred dollars for him, the plaintiff, which Cary Peebles had sent him, the witness, for plaintiff. Plaintiff swore he would not have it, but said he wanted the wheat. Witness did not read the letter to Benson, but thought he stated to him the substance of what defendant had directed him to communicate. Witness told plaintiff that he had deposited the money with Montgomery Ferguson for him.

This witness further stated, that he had deposited the money for safe keeping with Montgomery Ferguson prior to the last interview with plaintiff, and that said Ferguson put it in his desk in his store-house in Franklin, where it was at the time of the last interview between himself and plaintiff. That himself and Peebles, who were doing business together, had been in the habit of depositing their money with said Ferguson for safe-keeping, and that others had deposited money with said Ferguson, and that he knew of no safer place in Franklin to keep money; and that Ferguson was a man of as much honesty, prudence, and care, as any man in Howard county. Ferguson, examined as a witness, stated that Alsop came to his house, threw down a package, and remarked there was some money sent to him by Cary Peebles for Doctor Benson. Ferguson opened the money and counted four hundred dollars, in United States Bank paper, which he put in his desk. On the night of the 24th of December, same year, Ferguson's house was forced and the money stolen. Ferguson considered his house as safe a place as any other in Franklin for keeping money at that time.

Peebles had exerted himself for two or three weeks to purchase wheat for Benson, at fifty cents per bushel, but the price of wheat had suddenly risen, and none could be purchased at fifty cents per bushel.

The plaintiff then asked nineteen instructions, of which the court gave eleven, and refused the following, (numbered here as in the bill of exceptions:)

2. That they are to take the said agreement as the only evidence of the contract of the parties, regardless of what the parties said before the executing of the writing, or afterwards, as to what their agreement or contract about the matter was.

3. In substance the second.

5. That if they believe from the evidence, that the money was so deposited, without the consent of the plaintiff, and that the same was stolen from Ferguson, and lost, that the loss must be borne by the defendant and not by the plaintiff.

12. That under the pleadings in this cause, they are bound to disregard any evidence of a tender of money due the plaintiff.

13. That the defendant cannot avail himself of any tender made by him, without having pleaded such tender.

14. The defendant cannot avail himself of any deposite of money with Ferguson for the plaintiff, without

having specially pleaded such deposite in this action.

17. That unless they find from the evidence that the plaintiff knew that the defendant could not purchase wheat with the money at the time it was deposited with Ferguson, then the risk and hazard of the deposite is to be borne by the defendant.

19. That if they find that the defendant agreed to let the plaintiff have the wheat which he had engaged previous to receiving the money of the plaintiff, for the money received, then the defendant was bound to deliver the plaintiff that wheat, or pay him back his money; and that in such case, the defendant had no right to deposite the money with Ferguson without the consent of the plaintiff. To the refusing of these instructions the plaintiff objected.

The defendant then moved the following instructions, which were given by the court:

1. That if the defendant, immediately upon receiving the money, made reasonable exertions to purchase the wheat at the price stipulated, and was unable to do so, and immediately thereafter offered to return the money to the plaintiff, and the plaintiff refused to receive the same, and thereupon the money was stolen and wholly lost, without any want of ordinary diligence upon the part of the defendant to preserve the same, then the loss of the money must fall upon the plaintiff, and that he cannot recover.

2. That if the defendant, while the notes were in his possession, exchanged part of them for other notes of the same kind and value, but of smaller denominations, such exchange does not, of itself, fix upon the defendant a liability for the notes not exchanged, and if such were offered to be returned, if such were the fact.

3. That if the bills received, or any of them, were exchanged by defendant for smaller bills of the same kind, and this was done with the consent of the plaintiff, such exchange does not affect the liability of the defendant, and that such consent need not be expressly proved, but may be presumed from sufficient circumstances. To the giving of these instructions, the plaintiff objected.

The errors assigned are:

1. That the court permitted the defendant to give parol evidence to explain and to show what was the agreement of the parties, relative to the undertaking of the defendant to purchase wheat.

2. That the court overruled the objections of the plaintiff to the evidence offered by the defendant.

3. That the court refused the instructions asked by the plaintiff.

4. That the court gave instructions asked by the defendant.

5. That the court refused to grant a new trial.

The first error assigned is, that the court permitted the defendant to give parol evidence to explain the written instrument. The written instrument acknowledged the receipt of money; that the money was to be used in purchasing wheat; that the wheat was to be received and forwarded, and that the defendant was to be paid for his services and for barrels. The price to be given for the wheat, the manner of receiving it, and the place to which it was to be forwarded, were matters not explained. Parol testimony was admissible to explain the understanding of the parties in regard to these matters. The parol evidence given in this case went to show that the plaintiff had limited the defendant to fifty cents per bushel in purchasing the wheat. This was no contradiction of the written instrument; it was no addition, and was no alteration, and it did not vary the terms of the written contract; but was merely explanatory in its character, and intended to remove ambiguity in the contract, and was therefore properly admitted by the court. It follows, also, that the court committed no error in refusing the second and third instructions asked by the plaintiff—1 Chit. Ev. 480; 3 Sta. Ev. 1047–8, 9.

The defendant was not authorised to give more than fifty cents per bushel for wheat. After obtaining the money from the plaintiff, wheat rose suddenly to seventy-five cents per bushel, and could not be purchased at fifty cents. It was then wholly out of the power of the defendant to make purchases under the restriction imposed on him by the plaintiff, as to the price. The reason for retaining the money of the plaintiff longer in his possession then ceased, and as a prudent man, it became the duty of the defendant to return it to the right owner. What the liability of the defendant would have been, had the money been lost before he offered to return it to the plaintiff, it is now useless to inquire, as the money was not lost till after that time.

The plaintiff insists, that the defendant could not avail himself of any tender of the money, without having pleaded such tender. No tender, in the technical sense of that term, is pretended to be set up by the defendant in this case. He insists, simply, that he offered to return the plaintiff his money, and that the plaintiff refused to

Parol evidence, though inadmissible to vary the terms of a written contract, may be resorted to for the purpose of explaining or removing ambiguities as to the time, place, and manner of performing the same, where the writing is silent.

A. deposited with B. $400, to be used in the purchase of wheat, in case it could be purchased at a certain price; B. being unable to buy any at the stipulated price, deposited the money with one F. and at the same time advised A. of what he had done. Subsequently, and after A. knew that the money was in F.'s possession, subject to his orders, the money was stolen. Held, that the facts above stated may be given in evidence under the

receive it, and that from that time the nature of his liability was changed. As no tender was attempted to be set up in this case, the court properly refused the twelfth and thirteenth instructions asked by the plaintiff.

*general issue in assumpsit, as releasing the deft. from all liability, and that they do not amount to a plea of tender. Nor was it necessary to plead specially the deposite, &c.*

Nor was it necessary, to enable the defendant to avail himself of the deposite made with Ferguson, to plead it specially. It was matter of which he might avail himself under the general issue. The fourteenth instruction asked by the plaintiff was therefore properly refused. The seventeenth instruction was also rightly rejected. The plaintiff might not choose to inform himself that the defendant could not purchase wheat at fifty cents per bushel. And so of the nineteenth instruction, because there was no evidence to support it, and it might have tended to confuse and mislead the jury.

There was no error in the instructions given for the defendant. After the offer of the defendant to return the money, and the refusal of the plaintiff to receive it, the defendant was bound to use only ordinary diligence in preserving it. If some of the bills were exchanged for smaller bills, with a view of carrying into effect the intention of the parties to the contract, such exchange would not affect the liability of the defendant. And so, if it were done with the consent of the plaintiff. And such consent need not be expressly proved, but may be presumed from sufficient circumstances.

The court then committed no error in refusing the instructions of the plaintiff, and none in giving the instructions asked by the defendant. The evidence was sufficient to warrant the finding of the jury. It follows that the motion for a new trial was properly overruled. The judgment of the circuit court ought therefore to be affirmed; and Judge Tompkins concurring, it is affirmed.

McGirk, Judge.—I dissent from the foregoing opinion.